IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Aura Doreli Alva Merida and Francis Enrique Cruz Estudillo, | ) | Case No.: 4:25-cv-05420-JD |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER AND** |
| | ) | **OPINION** |
| Director of the United States Citizenship and Immigration Services, | ) | |
| | ) | |
| Defendant. | ) | |

This immigration matter is before the Court on Defendant Director of United States Citizenship and Immigration Services' ("USCIS") Motion to Dismiss the Amended Complaint. (DE 28.) Plaintiffs Aura Doreli Alva Merida ("Alva Merida") and Francis Enrique Cruz Estudillo ("Cruz Estudillo") seek relief under the Administrative Procedure Act ("APA") based on USCIS's alleged delay in processing Alva Merida's petition for U nonimmigrant status and the related Form I-918A filed on behalf of Cruz Estudillo. (DE 23 ¶¶ 39, 42–43.)

The Amended Complaint asserts three claims. Count I alleges that USCIS has unreasonably delayed making a bona fide determination ("BFD") on Alva Merida's U-visa petition. Count II alleges, in the alternative, that USCIS has unlawfully withheld a waiting-list determination ("WLD"). Count III alleges, also in the alternative, that USCIS has unreasonably delayed making a WLD. (DE 23.) USCIS moves to dismiss under Rule 12(b)(1), Fed. R. Civ. P., for lack of subject-matter jurisdiction and under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.

USCIS also argues that Plaintiffs lack Article III standing to pursue the WLD claims. (DE 28.)

Having reviewed the Amended Complaint, the parties' briefing, and the applicable law, the Court grants USCIS's motion as to Count I and denies the motion as to Counts II and III.

## I.    BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and accepted as true for purposes of the present motion. (DE 23.)

### A.    Factual Background

Plaintiff Alva Merida and her husband, co-Plaintiff Cruz Estudillo, are citizens and nationals of Guatemala who reside in Conway, South Carolina. (DE 23 ¶¶ 1–2, 39.) They allege that they have lived in the United States for approximately twenty-two years. (*Id.* ¶ 39.) On July 31, 2008, Alva Merida's United States citizen daughter was the victim of a sexual assault in Myrtle Beach, South Carolina. (*Id.* ¶ 40.) Alva Merida alleges that, under the U-visa regulations, she qualifies as an indirect victim of her daughter's victimization. (*Id.* ¶ 41.)

On December 20, 2024, Alva Merida filed a Form I-918, Petition for U Nonimmigrant Status, together with a signed personal statement and a timely signed Form I-918 Supplement B law-enforcement certification. (*Id.* ¶ 42.) She also filed a complete Form I-918A on behalf of Cruz Estudillo. (*Id.* ¶ 43.) USCIS accepted the applications and assigned receipt numbers for both Alva Merida and Cruz Estudillo. (*Id.* ¶ 44.) Plaintiffs allege that USCIS's acceptance of the applications and assignment of receipt numbers confirms that the applications are complete. (*Id.* ¶ 45.)

Plaintiffs also allege that neither applicant has a disqualifying criminal history, that both provided biometrics, and that USCIS received the biometric results shortly thereafter. (*Id.* ¶¶ 46–48.) As of the filing of the Amended Complaint, Plaintiffs allege that USCIS had taken no action on their applications, leaving them without either a bona fide determination or a waiting-list determination. (*Id.* ¶¶ 49–50.)

**B.     Procedural Background**

Alva Merida filed this action *pro se* on June 12, 2025, asserting claims under the Administrative Procedure Act. (DE 1.) On June 17, 2025, the Magistrate Judge entered an order directing the Clerk not to authorize service and issued a Report and Recommendation recommending dismissal without prejudice and without issuance and service of process. (DE 8; DE 9.)

After the Report was issued, counsel appeared on Alva Merida's behalf and moved for leave to file an amended complaint. (DE 11; DE 12.) Alva Merida also filed objections to the Report and later submitted supplemental authority in support of amendment and her objections. (DE 13; DE 17; DE 20.) On December 2, 2025, the Court granted leave to amend, directed the Clerk to docket the First Amended Complaint and issue a summons, declined the Report as moot in light of the amended pleading, denied the objections as moot, and directed Defendant to answer or otherwise respond after service. (DE 22.)

The Clerk docketed the Amended Complaint on December 2, 2025. (DE 23.) The summons was issued on December 3, 2025, and Defendant was served that same day. (DE 24; DE 25.) After receiving an extension of time to respond, Defendant filed

3

the present Motion to Dismiss on February 13, 2026. (DE 26; DE 28.) Plaintiffs filed a response in opposition on February 27, 2026, and Defendant filed a reply on March 6, 2026. (DE 29; DE 30.) The motion is fully briefed and ripe for review.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1), Fed. R. Civ. P. – Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a pre-answer motion that raises a "defense to a claim for relief" for "lack of subject-matter jurisdiction[.]" "[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may contend that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This is a facial challenge. In that circumstance, the court affords the plaintiff the same procedural protection as under Rule 12(b)(6): it accepts the complaint's well-pleaded factual allegations as true and denies the motion if those allegations are sufficient to invoke subject-matter jurisdiction. *Kerns*, 585 F.3d at 192; *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024) (noting that "the Rule 12(b)(1) and Rule 12(b)(6) analyses are materially identical in this scenario").

Second, a defendant may contend "that the jurisdictional allegations of the complaint were not true." *Adams*, 697 F.2d at 1219. This is a factual challenge. In that circumstance, the court need not presume the truth of the complaint's jurisdictional allegations, may consider evidence outside the pleadings, and may resolve disputed jurisdictional facts without converting the motion into one for summary judgment. *Adams*, 697 F.2d at 1219; *Kerns*, 585 F.3d at 192; *Evans*, 105

F.4th at 615. If necessary, the court may conduct an evidentiary hearing to determine whether facts exist to support subject-matter jurisdiction. *Kerns*, 585 F.3d at 192.

When a facial challenge is before the court, Rule 12(b)(6) principles govern. Thus, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court may also consider documents attached to the complaint, as well as documents attached to the motion to dismiss, so long as they are authentic and integral to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). A document is "integral to the complaint" when "the complaint relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

**B.    Rule 12(b)(6), Fed. R. Civ. P. – Failure to State a Claim**

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc.,* 7 F.3d at 1134. To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks

5

omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

## C.     Article III – Standing

Because Article III limits the judicial power of the federal courts to "Cases" and "Controversies," standing is a threshold jurisdictional requirement. To establish Article III standing, a plaintiff must show that she suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be concrete and particularized, and actual or imminent rather than conjectural or hypothetical. *Spokeo*, 578 U.S. at 339. The alleged injury must also be traceable to the challenged conduct of the defendant. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000). And although Congress may create statutory causes of action, "Article III standing requires a concrete injury even in the

context of a statutory violation." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 426 (2021).

In evaluating a standing challenge, however, the court must take care not to conflate jurisdiction with the merits. Standing asks whether the plaintiff is a proper party to invoke the court's jurisdiction and remedial powers, not whether the plaintiff will ultimately prevail. *See Warth v. Seldin,* 422 U.S. 490, 498–500 (1975). Accordingly, the court should not dismiss for lack of standing merely because the complaint may fail on the merits, but only when the plaintiff fails to plead facts supporting injury, causation, and redressability.

## III.     DISCUSSION

USCIS moves to dismiss Count I, which challenges the alleged delay in making a bona fide determination ("BFD"), under Rule 12(b)(1) and Rule 12(b)(6). USCIS also moves to dismiss Counts II and III, which concern waiting-list determinations ("WLDs"), arguing that those claims are unreviewable, inadequately pleaded, and unsupported by Article III standing. (DE 28.) Plaintiffs oppose dismissal, arguing that USCIS has a required, discrete duty to make both BFDs and WLDs, or at minimum that their WLD claims should proceed because the waiting-list process is grounded in regulation. (DE 29.)

For the reasons below, the Court grants the motion as to Count I and denies it as to Counts II and III.

## A.     Overview of U-Visa Statutory and Regulatory Framework

Congress created U nonimmigrant status for certain noncitizen victims of qualifying criminal activity who possess information about that criminal activity and have been, are being, or are likely to be helpful to law enforcement or other qualifying authorities in the investigation or prosecution of that activity. 8 U.S.C. § 1101(a)(15)(U)(i). The statute also permits certain qualifying family members to obtain derivative U nonimmigrant status. *Id*. § 1101(a)(15)(U)(ii). For a principal petitioner who is twenty-one years of age or older, qualifying family members include the petitioner's spouse and children. 8 C.F.R. § 214.14(a)(10).

"USCIS has sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1). A principal petitioner seeking U-1 nonimmigrant status must file Form I-918 and submit required initial evidence, including a Form I-918 Supplement B law-enforcement certification and a signed statement describing the facts of the victimization. *Id*. § 214.14(c)(2). A principal petitioner may seek derivative U nonimmigrant status for a qualifying family member by filing Form I-918, Supplement A. *Id*. § 214.14(f)(2). USCIS must issue a written decision approving or denying both the principal Form I-918 and any Form I-918, Supplement A. *Id*. §§ 214.14(c)(5), (f)(6).

Congress capped the number of principal U-1 nonimmigrant visas or grants of U-1 nonimmigrant status at 10,000 per fiscal year. 8 U.S.C. § 1184(p)(2)(A); 8 C.F.R. § 214.14(d)(1). Because of that annual cap, USCIS's regulations establish a waiting-list process. The regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list

and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2). Priority on the waiting list is determined by the filing date of the petition, "with the oldest petitions receiving the highest priority." *Id*. While a principal petitioner is on the waiting list, USCIS "will grant deferred action or parole" to the U-1 petitioner and qualifying family members and, in its discretion, may authorize employment for them. *Id*.

In 2008, Congress added a separate interim employment authorization provision for pending U-visa petitioners. That provision states that the Secretary of Homeland Security "may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)[.]" 8 U.S.C. § 1184(p)(6). USCIS later implemented the BFD process through its Policy Manual.[1] *See* U.S. Citizenship & Immigr. Servs., Policy Manual, Volume 3, Part C, Chapter 5 – Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 ("USCIS Policy Manual"). Under that process, USCIS first determines whether a pending Form I-918 is bona fide by reviewing whether the petitioner has submitted the required initial evidence and whether USCIS has received the results of required background and security checks. (USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5, Intro. & § A.1.) USCIS then determines whether the petitioner poses national-security or public-safety concerns or otherwise merits a favorable exercise of discretion for a BFD-based employment authorization document and deferred action. (*Id*. § B.) If USCIS grants a BFD EAD and deferred action,

---

[1]    Because USCIS raises a facial challenge to subject-matter jurisdiction and because the Amended Complaint and the parties' briefs rely on the USCIS Policy Manual, the Court considers the Policy Manual as integral to the pleadings and the statutory and regulatory framework at issue. *See Goines*, 822 F.3d at 166.

USCIS generally does not conduct a waiting-list adjudication at that stage; instead, the petitioner's next adjudicative step is final adjudication when space becomes available under the statutory cap. (*Id.* Intro. & § C.) If USCIS determines that a petitioner will not receive a BFD EAD, USCIS initiates waiting-list adjudication and proceeds to a full adjudication for waiting-list placement. (*Id.* § C & § C.5.)

This distinction is central to the present motion. Count I concerns USCIS's alleged delay in making a BFD under the Policy Manual process implementing 8 U.S.C. § 1184(p)(6). Counts II and III concern USCIS's alleged refusal or delay in making a WLD under 8 C.F.R. § 214.14(d)(2).

## B.     Count I – The BFD Claim

USCIS moves to dismiss Count I, which alleges unreasonable delay in making a BFD. USCIS argues that Count I is not reviewable because the BFD process implements discretionary interim employment-authorization authority under 8 U.S.C. § 1184(p)(6), and because Plaintiffs have not identified a discrete agency action that USCIS is required to take under APA § 706(1). (DE 28 at 12–21.) Plaintiffs respond that they do not seek an order compelling USCIS to grant employment authorization, but only an order requiring USCIS to *make* a BFD. (DE 29 at 2.) They also contend that USCIS's Policy Manual requires BFD review for domestic U-visa petitioners and that § 1252(a)(2)(B)(ii) does not bar review of agency inaction. (DE 29 at 2–11.)

The APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But a claim under § 706(1) may

10

proceed only where the plaintiff identifies a "discrete agency action" that the agency is "required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The APA also does not apply to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2).

Count I fails under these principles. Section 1184(p)(6) provides that the Secretary of Homeland Security "may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)[.]" 8 U.S.C. § 1184(p)(6). The Fourth Circuit has held that this language confers discretion and does not require USCIS to adjudicate employment authorization requests from pending U-visa petitioners. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366–74 (4th Cir. 2021). In *Gonzalez*, the court explained that § 1184(p)(6) does not require "the agency to do anything" and that the phrase "pending, bona fide application" supplies only a prerequisite that must exist if the agency chooses, in its discretion, to grant employment authorization. *Id.* at 366, 371.

Plaintiffs attempt to distinguish *Gonzalez* by separating the BFD from the employment-authorization decision. Their argument has some force as a descriptive matter: the Policy Manual describes the BFD process as involving an initial determination whether a petition is bona fide, followed by a discretionary determination whether the petitioner warrants a BFD-based employment authorization document and deferred action. *See* USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5, Intro. & §§ A–C. But that distinction, even if accepted, does not identify a

statute or regulation requiring USCIS to make a BFD as a separate adjudicative endpoint enforceable under § 706(1).

The BFD process was implemented under USCIS policy to administer the discretionary authority conferred by Congress in § 1184(p)(6). The Policy Manual provides that USCIS issues BFD EADs and grants deferred action if it determines that a petitioner has a bona fide petition and that a favorable exercise of discretion is warranted. *See id*. §§ B–C. The Policy Manual also provides that nonissuance of a BFD EAD is not a denial of Form I-918 or Form I-765, is not final agency action, and is not subject to motions, appeals, or requests to reapply for a BFD EAD. *See id*. § C. Nor does the Policy Manual transform the BFD process into a mandatory adjudication enforceable under § 706(1). Agency policy may guide how an agency exercises discretionary authority, but Plaintiffs identify no statute or regulation requiring USCIS to make a BFD within any particular time—or to make a BFD at all as a standalone adjudicative decision. That distinguishes Count I from the waiting-list claims addressed below, which rely on regulatory language providing that eligible petitioners who cannot receive U-1 status solely because of the statutory cap "must be placed on a waiting list." 8 C.F.R. § 214.14(d)(2). The BFD process, by contrast, rests on USCIS's policy implementation of discretionary employment authorization authority.

Plaintiffs' reliance on the *Accardi* doctrine does not alter that conclusion. (DE 29 at 4–5.) *Accardi* requires an agency to follow binding rules or procedures that constrain its discretion. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S.

12

260, 266–68 (1954). But *Accardi* does not transform the Policy Manual's description of USCIS's internal BFD processing sequence into a standalone adjudicative duty enforceable under § 706(1). The Policy Manual guides USCIS in administering discretionary BFD-based employment authorization and deferred action; it does not impose a regulatory deadline or create a regulation with the force of law requiring USCIS to issue a separate BFD decision outside that discretionary process. *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970). The relevant distinction remains the one recognized in *Gonzalez*: the waiting-list obligation arises from binding regulatory language, while pre-waiting-list employment authorization under § 1184(p)(6) remains discretionary. *See Gonzalez*, 985 F.3d at 371, 374 n.10.

Plaintiffs also argue that § 1252(a)(2)(B)(ii) does not bar review (DE 29 at 6–7) because Count I challenges agency *inaction* rather than a discretionary decision or action. *See Lovo v. Miller*, 107 F.4th 199, 207–10 (4th Cir. 2024). The Court need not decide the full scope of § 1252(a)(2)(B)(ii) to resolve Count I. Even assuming § 1252(a)(2)(B)(ii) does not bar review of delay as such, the APA still permits relief only when an agency has failed to take a discrete action that it is required to take. *See Norton*, 542 U.S. at 64; *Lovo*, 107 F.4th at 210–11. Because Plaintiffs have not identified a nondiscretionary duty requiring USCIS to make a BFD, Count I cannot proceed.

Accordingly, USCIS's Motion to Dismiss is granted as to Count I because Plaintiffs have not identified a nondiscretionary agency action that USCIS is required to take under APA § 706(1).

### C.    Counts II and III – The WLD Claims

USCIS next moves to dismiss Counts II and III, which concern WLDs. Count II alleges that USCIS has unlawfully withheld WLDs required by 8 C.F.R. § 214.14(d)(2). Count III alleges, in the alternative, that USCIS has unreasonably delayed making WLDs. (DE 23 ¶¶ 169–239.) USCIS argues that the WLD claims are unreviewable because Congress has not imposed a deadline for waiting-list adjudications and because the timing and sequencing of those adjudications are committed to agency discretion. USCIS also argues that Plaintiffs have not plausibly alleged unreasonable delay under the *TRAC* factors. (DE 28 at 22–31; DE 30 at 3–4.) Plaintiffs respond that the WLD claims are reviewable because USCIS's own regulation requires eligible petitioners to be placed on the waiting list when the only reason they cannot receive U-1 nonimmigrant status is the statutory cap. (DE 29 at 11–21.)

### 1.    Reviewability

The Court concludes that Counts II and III are reviewable at this stage. Unlike Count I, which rests on the Policy Manual process implementing discretionary employment-authorization authority under 8 U.S.C. § 1184(p)(6), Counts II and III rely on a binding regulation. That regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2).

*Gonzalez* supports this distinction. There, the Fourth Circuit held that USCIS was not required to adjudicate pre-waiting-list employment-authorization requests under § 1184(p)(6) but reached a different conclusion regarding waiting-list

14

adjudications. The Fourth Circuit held that the plaintiffs' waiting-list delay claim was reviewable because USCIS had "committed itself by regulation" to place eligible petitioners on the waiting list, and it reversed dismissal of the claim alleging unreasonable delay in placing plaintiffs on that list. *Gonzalez*, 985 F.3d at 374–76 & n.10.

USCIS argues that the absence of a congressionally mandated deadline leaves the timing of WLD adjudications committed to agency discretion. (DE 28 at 22.) But the absence of a statutory deadline does not, itself, make an unreasonable-delay claim unreviewable. The APA requires agencies to proceed "within a reasonable time," 5 U.S.C. § 555(b), and authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed," *id*. § 706(1), when the plaintiff identifies a discrete agency action that the agency is required to take. *Norton*, 542 U.S. at 64; *see also Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 903 (4th Cir. 2020). At this stage, Plaintiffs have identified such an action: the regulatory waiting-list determination required by § 214.14(d)(2) for eligible petitioners who cannot receive U-1 status solely because of the cap.

The Court does not decide, at this stage, whether Plaintiffs are eligible for waiting-list placement or whether USCIS must place them on the waiting list. Nor does the Court order USCIS to grant deferred action, parole, employment authorization, or any other discretionary benefit. The Court holds only that Plaintiffs have identified a required adjudicative step sufficient to permit review of their WLD claims under the APA.

**2.    Failure to State a Claim**

USCIS also moves to dismiss Counts II and III under Rule 12(b)(6). Count II alleges unlawful withholding, while Count III alleges unreasonable delay. The two theories overlap, but they are not identical. Count II rests on the allegation that USCIS has effectively refused to make WLDs for petitioners like Plaintiffs because, under the BFD process, USCIS generally does not conduct waiting-list adjudications unless and until it determines that a petitioner will not receive BFD-based employment authorization and deferred action. Count III alleges, in the alternative, that even if USCIS has not categorically withheld WLDs, it has unreasonably delayed making a WLD in Plaintiffs' case. (DE 23 ¶¶ 169–239.)

As to Count II, Plaintiffs have plausibly alleged that USCIS is withholding a required adjudicative step. Plaintiffs allege that § 214.14(d)(2) requires USCIS to make WLDs for eligible petitioners, that they submitted complete petitions and biometrics, and that USCIS has taken no action resulting in either a BFD or a WLD. (DE 23 ¶¶ 42–50, 169–89.) They also allege that USCIS's BFD process has displaced or postponed the WLD process in a manner inconsistent with the regulation. Because Count II alleges a refusal to make WLDs, not merely a failure to meet a date-certain deadline, the Court does not treat it as established that USCIS has "unlawfully withheld" agency action. But accepting the allegations as true, Plaintiffs have stated a plausible claim that USCIS is withholding a required WLD. Whether USCIS's sequencing of BFD and WLD review is ultimately lawful, and whether Plaintiffs are

16

eligible for waiting-list placement, are merits questions not suitable for resolution on the present record.

Count III also survives. Courts evaluate unreasonable-delay claims under the six *TRAC* factors:

(1)   the time agencies take to make decisions must be governed by a rule of reason;

(2)   where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)   delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)   the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)   the court should also take into account the nature and extent of the interests prejudiced by the delay; and

(6)   the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984); *see also South Carolina v. United States*, 907 F.3d 742, 759–60 (4th Cir. 2018).

Plaintiffs allege facts addressing several *TRAC* factors. As to the rule of reason, Plaintiffs allege that USCIS has no demonstrable rule for making WLDs, that there is no evidence USCIS makes WLDs on a first-in, first-out basis, that USCIS systematically prioritizes later-filed petitions over earlier-filed petitions, and that USCIS has stopped issuing WLDs for most applicants since implementing the BFD process in June 2021. (DE 23 ¶¶ 193–205, 219–21, 229.) Plaintiffs also allege that there is no cap on the waiting list itself, that published processing times do not show

17

whether WLDs are made in a reasonable order, and that USCIS has sufficient resources to make WLDs in a reasonable time. (*Id.* ¶¶ 197–99, 223–25.) As to congressional intent and human welfare, Plaintiffs allege that Congress expected immigration-benefit applications to be processed in months rather than years, and that the absence of a WLD leaves them without deferred action or parole, work authorization, social security numbers, driver's licenses, bank accounts, and protection from removal. (*Id.* ¶¶ 206–16, 226.) Taken as true, these allegations plausibly state an unreasonable-delay claim at the pleading stage.

USCIS responds that Plaintiffs filed their petitions recently, that the agency faces substantial competing demands, that USCIS has made progress reducing the U-visa backlog, and that ordering WLD adjudication would disrupt USCIS's processing priorities and effectively allow Plaintiffs to jump the line. (DE 28 at 23–31; DE 30 at 3–4.)

Those arguments may ultimately carry weight, and USCIS cites recent cases dismissing U-visa delay claims involving similar or longer periods of delay. But *Gonzalez* remains controlling in this Circuit, and *Gonzalez* cautions that unreasonable-delay claims are fact-dependent and often "sit[] uncomfortably at the motion to dismiss stage." 985 F.3d at 375. At this stage, the Court accepts Plaintiffs' well-pleaded factual allegations as true and draws reasonable inferences in their favor. Plaintiffs have plausibly alleged that USCIS has failed to make a required

WLD within a reasonable time. The Court, therefore, declines to resolve the *TRAC* factors as a matter of law on the present motion.[2]

Accordingly, USCIS's Motion to Dismiss is denied as to Counts II and III.

**D.    Article III Standing – The WLD Claims**

USCIS also argues that Plaintiffs lack Article III standing to pursue the WLD claims because those claims depend on future events in the BFD process. (DE 28 at 28–31.) The Court disagrees at this stage.

Plaintiffs allege that USCIS has failed to make a required WLD and that this failure leaves them without the adjudicative determination that, if favorable, would result in waiting-list placement, deferred action or parole, and the opportunity to seek employment authorization. (DE 23 ¶¶ 49–50, 169–239.) They also allege practical harms from the absence of that adjudication, including the continued inability to obtain work authorization, social security numbers, driver's licenses, bank accounts, and protection from removal. (*Id.* ¶¶ 210–16, 226.) These allegations are sufficient at the pleading stage to establish a concrete and particularized injury.

Those alleged injuries are fairly traceable to USCIS's alleged failure to make a WLD and would likely be redressed, at least in part, by an order requiring USCIS

---

[2]    USCIS's ripeness argument does not require a different result. USCIS contends that WLD adjudication is premature because, under agency policy, officers initiate waiting-list adjudication for petitioners who do not receive BFD-based employment authorization and deferred action. But Plaintiffs do not ask the Court to place them on the waiting list now or to grant any discretionary benefit. They seek review of USCIS's alleged refusal or delay in making the regulatory WLD. The alleged injury is, therefore, not contingent on whether Plaintiffs ultimately receive BFD-based relief or are found eligible for waiting-list placement; it is the absence of the adjudicative step that Plaintiffs contend the regulation requires. Whether USCIS's BFD-first sequencing policy lawfully postpones WLD review goes to the merits of Counts II and III, not to ripeness at the pleading stage.

to make the required adjudicative determination. Plaintiffs need not show that they will ultimately be placed on the waiting list or receive any discretionary benefit to establish standing to seek a required adjudication. USCIS's argument that WLD adjudication should occur only after BFD review under agency policy is better understood as a merits argument about the lawful sequencing of USCIS's processes. It does not defeat Article III standing at the pleading stage.

Accordingly, USCIS's Motion to Dismiss Counts II and III for lack of Article III standing is denied.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (DE 28) is GRANTED IN PART and DENIED IN PART.

Defendant's Motion to Dismiss Count I is GRANTED. Count I is DISMISSED WITHOUT PREJUDICE.

Defendant's Motion to Dismiss Counts II and III is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
July 2, 2026

20